## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GEORGE BARNETT, Individually and On
Behalf of Others Similarly Situated,

   Plaintiff,

              v.

NABORS DRILLING TECHNOLOGIES USA,
INC.; NABORS CORPORATE SERVICES,
INC., and NABORS INDUSTRIES, INC.

   Defendants.

Civil Action No.:_____

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, George Barnett ("Barnett" or "Plaintiff"), on behalf of himself and all others similarly situated, brings this lawsuit against Nabors Drilling Technologies USA, Inc., Nabors Corporate Services, Inc., and Nabors Industries, Inc. ("Nabors" or "Defendants") showing in support as follows:

### NATURE OF ACTION

1.      This is a civil action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA") seeking damages for Defendants' failure to pay Plaintiff time and one-half the regular rate of pay for all hours worked over 40 during any workweek while working for Defendants.

2.      Pursuant to 29 U.S.C. § 216(b), Plaintiff files this lawsuit individually and as an FLSA collective action on behalf of all similarly situated current and former oilfield employees who worked for Defendants on a day-rate basis who, like Plaintiff, were not paid time and one-half their respective rates of pay for all hours worked over 40 in any workweek for the time period

of three years preceding the date this lawsuit was filed and forward (the "Collective Action Members").

3. This civil action is also brought as a Rule 23 class action under the New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-20 – 50-4-30 ("NMMWA") for Defendants' failure to pay Plaintiff and similarly situated class members time and one-half the regular rate of pay for all hours worked over 40 during any workweek while working for Defendants. *See Kerr v. K Allred Oilfield Servs.,* LLC, No. 2:20-cv-00477, 2020 WL 5702809, at *3 (D.N.M. Sept. 24, 2020).

4. Barnett worked for the Defendant Nabors Drilling Technologies USA, Inc. as an Electrical Specialist from approximately September 1, 2008 to March 31, 2020.

5. Barnett and the other similarly situated employees who worked for Defendants in the last three years regularly worked more than 40 hours per workweek.

6. Barnett, and the similarly situated employees, never received overtime pay for the hours worked in excess of 40 hours in a single workweek.

7. Instead of receiving overtime as required by the FLSA and NMMWA, Defendants paid Barnett, and the similarly situated employees, a flat amount for each day worked (a day-rate) without overtime compensation.

8. Plaintiff and the Class/Collective Action Members seek all damages available under the FLSA and NMMWA, including back wages, liquidated damages, legal fees, costs, and pre- and post-judgment interest.

## **JURISDICTION & VENUE**

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal question under the FLSA.  20 U.S.C. § 216(b).

10.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative fact.

11.     The United States District Court of New Mexico has personal jurisdiction over Defendants because Defendants do business in New Mexico and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in New Mexico and in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to all claims occurred in this District.

13.     Defendant Nabors Drilling Technologies USA, Inc. conducts substantial business operations in this District and has its principal place of business within this District at 205 East Bender, Suite 150, Hobbs, New Mexico 88240 as indicated by the New Mexico Secretary of State business entity database.

14.     Defendant Nabors Drilling Technologies USA, Inc. maintains a listed registered agent for service of process in New Mexico located at 1012 Marquez Place, Unit 106B, Santa Fe, New Mexico 87505.

## PARTIES

**I.     Plaintiff George Barnett**

15.     Barnett is an individual residing in Panola County, Texas.  Plaintiff has standing to file this lawsuit.

16.     Barnett worked for the Defendants as an Electrical Specialist from approximately September 1, 2008 to March 31, 2020.

17.     Barnett regularly worked in excess of 40 hours in a workweek.

18.     Throughout his employment with the Defendants, Barnett was paid a flat day-rate with no overtime compensation regardless of the hours he actually worked.

19.     Barnett's relationship with the Defendants was an employer/employee relationship.

20.     Plaintiff Barnett has attached his written consent as Exhibit 1 to this Complaint.

## II.     Collective Action Members

21.     The similarly situated employees, or Putative Collective Action Members, sought to be certified is defined as follows:

> **All day-rate, oilfield workers employed by Defendants who worked in excess of 40 hours in any given workweek, and who were denied or not paid overtime compensation at any time during the past three (3) years (the "Putative Collective Action Members").**

22.     The Putative Collective Action Members are easily ascertainable from the business and personnel records maintained by Defendants.

23.     Plaintiff and the Putative Collective Action Members are all similarly situated within the meaning of Section 216(b) of the FLSA.

24.     The relevant time period for the claims of the Putative Collective Action Members is three years preceding the date this lawsuit was filed and forward.

## III.     Class Action Members

25.     The similarly situated employees, or Putative Class Action Members, sought to be certified is defined as follows:

> **All day-rate, oilfield workers employed by Defendants, in New Mexico, who worked in excess of 40 hours in any seven-day period, and who were denied or not paid overtime compensation (the "Putative Class Action Members").**

26.     Plaintiff can satisfy the relevant requirement of Rule 23 of the Federal Rule of Civil Procedure to maintain a class action with respect to the Putative Class Action Members' claims.

27.     The relevant time period for the claims of the Putative Class Action Members is the date that the alleged violation began to occur and forward.

## IV.   **Defendants**

28.     Nabors Drilling Technologies USA, Inc. is a Delaware corporation with its headquarters located at 515 West Greens Road, Suite 1000, Houston, Texas 77067.  Nabors Drilling Technologies USA, Inc. may be served by serving its registered agent for service of process, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201 or the address listed above in New Mexico.

29.     Nabors Corporate Services, Inc. is a Delaware corporation with its principal place of business at 515 West Greens Road, Suite 1000, Houston, Texas 77067.  Nabors Industries, Inc. may be served by serving its registered agent for service of process, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.  Nabors Corporate Services, Inc. issued the payments to Plaintiff.

30.     Nabors Industries, Inc. is a Delaware corporation with its principal place of business at 515 West Greens Road, Suite 1000, Houston, Texas 77067.  Nabors Industries, Inc. may be served by serving its registered agent for service of process, C T Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.  Nabors Industries, Inc. is the parent company of Nabors Drilling Technologies USA, Inc.

## COVERAGE UNDER THE FLSA

31.     At all relevant times, Defendants have been employers within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

32.     At all relevant times, Defendants have been enterprises within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

33.     At all relevant times, Defendants have been enterprises engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). The Defendants have, and have had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools and equipment - that have been moved in or produced for commerce.

34.     In each of the last three years, Defendants have had annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

35.     At all relevant times, Barnett and the Putative Class/Collective Action Members were engaged in commerce or in the production of goods for commerce.

36.     Defendants treated Barnett and the Putative Class/Collective Action Members as employees and uniformly dictated the pay practices applied to them.

37.     Defendants' day-rate scheme, depriving Barnett and the Putative Class/Collective Action Members of overtime compensation for weeks in which they worked over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

38.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

39.     Defendants are one of the world's largest oil and gas drilling contractors.  Nabors provides drilling equipment, services, technology, software, and manpower to drilling sites worldwide, including sites in Texas and New Mexico.

40.     To provide services, Defendants hired personnel (similar to Barnett) to work on their behalf, including other Electrical Specialists.

41.     Barnett's job duties included installing, maintaining, repairing, and troubleshooting all aspects of electronic and mechanical instruments and equipment related to Defendants' drilling operations.   This was not office work, but manual labor, sometimes performed in extreme conditions.   Barnett received no specialized training or academic education for this role aside from his years of hands-on experience working for Defendants.

42.     Barnett typically worked 12-hour shifts each day when he was on-site performing his job duties for Defendants.

43.     During the relevant period, Barnett worked for Defendants in excess of 40 hours a week for weeks at a time.

44.     During the relevant period, Barnett worked for Defendants on a day-rate basis.

45.     During the relevant period, Barnett was not paid overtime for the hours he worked for Defendants in excess of 40 hours each week.

46.     Barnett reported directly to Defendants' management-level employees.

47.     Throughout his employment with Defendants, Barnett regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Defendants paid Barnett a day-rate for each day worked, regardless of how many hours he worked in a day or week.

48.     For example, in the two-week period from October 7, 2019 through October 20, 2019, Barnett worked fourteen consecutive days totaling approximately 168 hours (84 hours per workweek) and did not receive any overtime compensation.

49.     Without the job performed by Barnett, Defendants would not have been able to complete its business objectives.

50.     Barnett was economically dependent on Defendants and relied on Defendants for work and compensation.

51.     Defendants dictated the amount and the type of compensation that Barnett would receive.

52.     Barnett was not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform his job duties.

53.     Barnett was never paid a salary.

54.     If Barnett did not work in a week, he did not receive a guaranteed amount of at least $455.

55.     For example, in the two-week period from November 18, 2019 through December 1, 2019, Barnett did not perform work for Defendants and did not receive compensation during that time.

56.     Defendants knew Barnett regularly worked overtime for weeks at a time.

57.     Defendants' records reflect the fact that Barnett regularly worked far more than 40 hours in most workweeks.

58.     Defendants set Barnett's schedule and compensation; supervised him; and required him to adhere to strict guidelines, directives, and Defendants' policies and procedures.

59.     The work Barnett performed was an essential part of Defendants' core businesses.

60.     Defendants uniformly denied, refused, or failed to pay Barnett overtime compensation for the hours they worked in excess of 40 hours in a single workweek.

61.     Barnett was not exempt from overtime.

62.     Defendants' day-rate policy violated the FLSA because it deprived Barnett of overtime pay for the hours they worked in excess of 40 hours in a single workweek.

63.     Defendants knew, or showed reckless disregard for whether, Barnett was not exempt from the FLSA's overtime provisions.

64.     Defendants knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

65.     The overtime owed to Barnett will be calculated using the Defendants' records.

66.     Barnett sustained damages arising out of Defendants' illegal and uniform employment policy.

67.     Defendants are liable under the FLSA for failing to pay overtime to Barnett.

68.     Consistent with Defendants' illegal day-rate policy, Barnett was not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

69.     As part of its regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Barnett.

70.     Defendants' illegal day-rate policy deprived Barnett of the premium overtime wages owed to them under federal law.

71.     Defendants were aware, or should have been aware, that the FLSA required them to pay Barnett for all hours worked in excess of 40 hours per workweek.

## **COLLECTIVE ACTION ALLEGATIONS**

72.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

73.     Barnett brings this claim as a collective action under the FLSA.

74.     Based on his experiences with Defendants, Barnett is aware that Defendants' illegal and unlawful practices and/or pay policies were imposed on the Putative Collective Action Members.

75.     Barnett's experiences are typical of the experiences of the Putative Collective Action Members.

76.     Barnett has no interest contrary to, or in conflict with, the Putative Collective Action Members that would prevent collective treatment.

77.     The specific job titles or precise work locations of the Putative Collective Action Members do not prevent collective treatment.

78.     The Putative Collective Action Members are similarly situated to Plaintiff Barnett in all relevant respects.

79.     The Putative Collective Action Members were victimized by Defendants' pattern, practice, and/or policy which was in willful violation of the FLSA.

80.     To provide services, Defendants hired personnel (similar to the Putative Collective Action Members) to work on their behalf.

81.     During the relevant period, the Putative Collective Action Members worked for Defendants in excess of 40 hours a week for weeks at a time.

82.     During the relevant period, the Putative Collective Action Members worked for Defendants on a day-rate basis.

83.     During the relevant period, the Putative Collective Action Members were not paid overtime for the hours they worked for Defendants in excess of 40 hours each week.

84.     Throughout their employment with Defendants, the Putative Collective Action Members regularly worked more than 40 hours each week without receiving overtime compensation.  Instead, Defendants paid them a day-rate for each day worked, regardless of how many hours they worked in a day or week.

85.     Without the job performed by the Putative Collective Action Members, Defendants would not have been able to complete its business objectives.

86.     The Putative Collective Action Members were economically dependent on Defendants and relied on Defendants for work and compensation.

87.     Defendants dictated the amount and the type of compensation that the Putative Collective Action Members would receive.

88.     The Putative Collective Action Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

89.     The Putative Collective Action Members were never paid a salary.

90.     If the Putative Collective Action Members did not work in a week, they did not receive a guaranteed amount of at least $455.

91.     Defendants knew the Putative Collective Action Members regularly worked overtime for weeks at a time.

92.     Defendants set the Putative Collective Action Members' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Defendants' policies and procedures.

93.     The work the Putative Collective Action Members performed was an essential part of Defendants' core businesses.

94.     Defendants uniformly denied, refused, or failed to pay the Putative Collective Action Members overtime compensation for the hours they worked in excess of 40 hours in a single workweek.

95.     The Putative Collective Action Members were not exempt from overtime.

96.     Defendants' day-rate policy violated the FLSA because it deprived the Putative Collective Action Members of overtime pay for the times they worked in excess of 40 hours in a single workweek.

97.     Defendants knew, or showed reckless disregard for whether, the Putative Collective Action Members were not exempt from the FLSA's overtime provisions.

98.     Defendants knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

99.     The overtime owed to the Putative Collective Action Members will be calculated using the Defendants' records and the same formulae that applies to Barnett.

100.    The Putative Collective Action Members sustained damages arising out of Defendants' illegal and uniform employment policy.

101.    Defendants are liable under the FLSA for failing to pay overtime to the Putative Collective Action Members.

102.    Consistent with Defendants' illegal day-rate policy, the Putative Collective Action Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

103.    As part of its regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Putative Collective Action Members.

104.    Defendants' illegal day-rate policy deprived the Putative Collective Action Members of the premium overtime wages owed to them under federal law.

105.    Defendants were aware, or should have been aware, that the FLSA required them to pay the Putative Collective Action Members for all hours worked in excess of 40 hours per workweek.

106.    A collective action is superior to other available means for fair, efficient, and consistent adjudication of the lawsuit.

107.    Absent a collective action, many of the Putative Collective Action Members would not obtain redress for their injuries, and Defendants would reap the unjust benefits of violating the FLSA.

108.    Further, even if some of the Putative Collective Action Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

109.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Collective Action Members, as well as provide judicial consistency.

110.    The questions of law and fact that are common to each Putative Collective Action Member predominate over any questions affecting solely the individual members.

111.    Among the common questions of law and fact are:

    a.    Whether Defendants employed the Putative Collective Action Members within the meaning of the FLSA;

    b.    Whether Defendants' decision to not pay overtime compensation to these workers was made in good faith;

    c.    Whether the Defendants' violation of the FLSA was willful; and

    d.    Whether Defendants' illegal and unlawful practices applied to the Putative Collective Action Members.

112.    Barnett knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

113.    Even if the issue of damages were somewhat individualized in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

114.    There are many similarly situated Putative Collective Action Members who have been denied, refused, or not paid overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

115.    This notice should be sent to the Putative Collective Action Members pursuant to 29 U.S.C. § 216(b).

116.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendant's records.

## CLASS ACTION ALLEGATIONS

117.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

118.    Barnett brings this claim as a class action under the NMMWA.

119.    Based on his experiences with Defendants, Barnett is aware that Defendants' illegal and unlawful practices and/or pay policies were imposed on the Putative Class Action Members.

120.    Barnett's experiences are typical of the experiences of the Putative Class Action Members.

121.    Barnett has no interest contrary to, or in conflict with, the Putative Class Action Members that would prevent collective treatment.

122.    The specific job titles or precise work locations of the Putative Class Action Members do not prevent collective treatment.

123.    The Putative Class Action Members are similarly situated to Plaintiff Barnett in all relevant respects.

124.    The Putative Class Action Members were victimized by Defendants' pattern, practice, and/or policy which was in willful violation of the NMMWA.

125.    To provide services, Defendants hired personnel (similar to the Putative Class Action Members) to work on their behalf.

126.    During the relevant period, the Putative Class Action Members worked for Defendants in excess of 40 hours during a seven-day period for weeks at a time.

127.    During the relevant period, the Putative Class Action Members worked for Defendants on a day-rate basis.

128.    During the relevant period, the Putative Class Action Members were not paid overtime for the hours they worked for Defendants in excess of 40 hours in a seven-day period.

129.    Throughout their employment with Defendants, the Putative Class Action Members regularly worked more than 40 hours in a seven-day period without receiving overtime compensation.  Instead, Defendants paid them a day-rate for each day worked, regardless of how many hours they worked.

130.    Without the job performed by the Putative Class Action Members, Defendants would not have been able to complete its business objectives.

131.    The Putative Class Action Members were economically dependent on Defendants and relied on Defendants for work and compensation.

132.    Defendants dictated the amount and the type of compensation that the Putative Class Action Members would receive.

133.    The Putative Class Action Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

134.    The Putative Class Action Members were never paid a salary.

135.    If the Putative Class Action Members did not work in a week, they did not receive a guaranteed amount of at least $455.

136.    Defendants knew the Putative Class Action Members regularly worked overtime for weeks at a time.

137.    Defendants set the Putative Class Action Members' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Defendants' policies and procedures.

138.    The work the Putative Class Action Members performed was an essential part of Defendants' core businesses.

139.    Defendants uniformly denied, refused, or failed to pay the Putative Class Action Members overtime compensation for the hours they worked in excess of 40 hours in a seven-day period.

140.    The Putative Class Action Members were not exempt from overtime.

141.    Defendants' day-rate policy violated the NMMWA because it deprived the Putative Class Action Members of overtime pay for the time they worked in excess of 40 hours in a seven-day period.

142.    Defendants knew, or showed reckless disregard for whether, the Putative Class Action Members were not exempt from the NMMWA's overtime provisions.

143.    Defendants knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the NMMWA.

144.    The overtime owed to the Putative Class Action Members will be calculated using the Defendants' records and the same formulae that applies to Barnett.

145.    The Putative Class Action Members sustained damages arising out of Defendants' illegal and uniform employment policy.

146.    Defendants are liable under the NMMWA for failing to pay overtime to the Putative Class Action Members.

147.    Consistent with Defendants' illegal day-rate policy, the Putative Class Action Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a seven-day period.

148.    As part of its regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the NMMWA with respect to the Putative Class Action Members.

149.    Defendants' illegal day-rate policy deprived the Putative Class Action Members of the premium overtime wages owed to them under state law.

150.    Defendants were aware, or should have been aware, that the NMMWA required them to pay the Putative Class Action Members for all hours worked in excess of 40 hours in a seven-day period.

151.    A class action is superior to other available means for fair, efficient, and consistent adjudication of the lawsuit.

152.    Absent a class action, many of the Putative Class Action Members would not obtain redress for their injuries, and Defendants would reap the unjust benefits of violating the NMMWA.

153.    Further, even if some of the Putative Class Action Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

154.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Action Members, as well as provide judicial consistency.

155.    The questions of law and fact that are common to each Putative Class Action Member predominate over any questions affecting solely the individual members.

156.    Among the common questions of law and fact are:

   a.    Whether Defendants employed the Putative Class Action Members within the meaning of the NMMWA;

   b.    Whether Defendants' decision to not pay overtime compensation to these workers was made in good faith;

   c.    Whether the Defendants' violation of the NMMWA was willful; and

   d.    Whether Defendants' illegal and unlawful practices applied to the Putative Class Action Members.

157.    Barnett knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

158.    Even if the issue of damages were somewhat individualized in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

159.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendant's records.

**CAUSE OF ACTION**
**VIOLATION OF THE FLSA**

160.    Barnett realleges and incorporates by reference all allegations in preceding paragraphs.

161.    All conditions precedent to this suit, if any, have been fulfilled.

162.    Barnett brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

163.    Defendants violated, and continue violating, the FLSA by failing to pay Barnett and the Putative Collective Action Members overtime compensation.

164.    Barnett and the Putative Collective Action Members were Defendants' employees for purposes of the FLSA overtime requirements.

165.    Defendants were Barnett's and the Putative Collective Action Members' employers under the FLSA.  Defendants suffered or permitted Barnett and the Putative Collective Action Members to work for, or on, its behalf during the relevant period.

166.    Defendants cannot meet its burden to demonstrate that Barnett or the Putative Collective Action Members are exempt from overtime under the administrative exemption.

167.    Defendants cannot meet its burden to demonstrate that Barnett or the Putative Collective Action Members are exempt from overtime under the executive exemption.

168.    Defendants cannot meet its burden to demonstrate that Barnett or the Putative Collective Action Members are exempt from overtime under the professional exemption.

169.    Defendants cannot meet its burden to demonstrate that Barnett or the Putative Collective Action Members are exempt from overtime under the highly compensated exemption.

170.    Defendants failed to pay Barnett and the Putative Collective Action Members overtime as required by the FLSA.

171.    Defendants paid Barnett and the Putative Collective Action Members a day-rate.

172.    Defendants knowingly, willfully, or in reckless disregard, carried out this illegal pattern or practice of failing to pay Barnett and the Putative Collective Action Members overtime compensation.

173.     Defendants' failure to pay overtime compensation to Barnett and the Putative Collective Action Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

174.     Accordingly, Barnett and the Putative Collective Action Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times his rate of pay, plus liquidated damages, attorney's fees and costs.

**CAUSE OF ACTION**
**VIOLATION OF THE NMMWA**

175.     Barnett realleges and incorporates by reference all allegations in preceding paragraphs.

176.     All conditions precedent to this suit, if any, have been fulfilled.

177.     Barnett brings his NMMWA claim as a class action under Rule 23 of the Federal Rules of Civil Procedure.

178.     Defendants violated, and continue violating, the NMMWA by failing to pay Barnett and the Putative Class Action Members overtime compensation.

179.     Plaintiff proposed an initial definition of the Putative Class Action Members as listed above in paragraph 25.

180.     Plaintiff reserves the right to refine this definition or establish sub-classes in the event that discovery reveals a more appropriate class definition exists.

181.     Numerosity (Fed. R. Civ. P. 23(a)(1)) – The Putative Class Action Members are sufficiently numerous that joinder is impracticable.  On information and belief, the number of Putative Class Action Members in New Mexico is in excess of _____.

182.     Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to the Putative Class Action Members as noted above in paragraph 156.

183.    <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)) – Plaintiff's claims are typical of those of the Putative Class Action Members.  Plaintiff, like the others employed in New Mexico, was subject to Defendants' policies or practices of failing to pay all due and owing overtime wages by paying Plaintiff and the Putative Class Action Members, a flat day-rate regardless of hours worked.

184.    <u>Adequacy</u> (Fed. R. Civ. P. 23(a)(4)) – Plaintiff will fairly and adequately represent and protect the interests of the Putative Class Action Members.

185.    <u>Adequacy of Representation</u> (Fed. R. Civ. P. 23(g)) – Plaintiff has retained counsel competent and experienced in complex class and collective actions, the FLSA, and state labor and employment litigation.  Plaintiff's counsel has litigated numerous class actions on behalf of employees seeking back overtime wages as well as other wage and hour concerns.  Plaintiff's counsel intend to commit the necessary resources to prosecute this action vigorously for the benefit of all the Putative Class Action Members.

186.    <u>Predominance and superiority</u> (Fed. R. Civ. P. 23(b)(3)) – Class certification of the New Mexico State Law ("NMMWA") is also appropriate under 23(b)(3) of the Federal Rules of Civeil Procedure because questions of law and fact common to the Putative Class Action Members predominate over any questions affecting only individual members of the putative class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies or practices unlawfully failed to compensate the Putative Class Action Members.  The damages suffered by individual class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' policies or practices.

187.   <u>Ascertainability</u> – The identity of the Putative Class Action Members is readily ascertainable based on Defendants' records.

188.   <u>Notice</u> (Fed. R. Civ. P. 23(c)(2)(B)) – Plaintiff intends to send notice of this lawsuit to all New Mexico Putative Class Action Members to the extent provided by Rule 23.

## JURY DEMAND

189.   Plaintiff demands a jury trial on behalf of himself and the Putative Class/Collective Action Members on issues so triable.

## PRAYER

**WHEREFORE**, Plaintiff George Barnett, individually and on behalf of the Putative Class/Collective Action Members, demands judgment against Defendants and respectfully requests that this Honorable Court grant the following relief:

a.   An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Collective Action Members to permit them to join in this action by filing a written notice of consent;

b.   An Order certifying this lawsuit as a class action under Rule 23 for the New Mexico state law claims;

c.   A judgment against Defendants awarding Barnett and the Putative Class/Collective Action Members all damages allowed by the FLSA and NMMWA, including back wages;

d.   Liquidated damages in an amount equal to the FLSA-mandated back wages and/or NMMWA-mandated back wages;

e.   Declaratory judgement that the practices complained of in this Complaint are unlawful under the FLSA and NMMWA;

f.  An Order awarding attorneys' fees, costs, and expenses as permiited by the FLSA and NNMWA;

g.  Pre- and post-judgment interest at the highest applicable rates; and

h.  Such other and further relief as may be necessary and appropriate under applicable law and in the Court's discretion.

Respectfully submitted,

By: /s/ Gabriel A. Assaad
Gabriel A. Assaad
gassaad@mcdonaldworley.com
Matthew S. Yezierski
matt@mcdonaldworley.com
McDonald Worley, PC
1770 St. James St., Suite 100
Houston, TX 77056
(713) 523-5500 – telephone
(713) 523-5501 – facsimile

**ATTORNEYS FOR PLAINTIFF**